Good morning. May it please the court, my name is Janet Taylor here on behalf of Plaintiff Christina Sullivan. I would like to reserve three minutes for rebuttal, please. Your Honors, we're here on a relatively infrequently encountered issue under the FMLA. And we're also here to address what Ms. Sullivan believes was inappropriate application of summary judgment standards by Honorable Judge Shea at the trial court level. Mr. Honorable Judge Shea, throughout his opinion, disregarded Ms. Sullivan's testimony as to what had transpired when Dollar Tree Stores came in and took over. Are you referring to her affidavit? Yes, ma'am. OK, not live testimony, but her affidavit. Yes, ma'am. I have a question about her affidavit and the Campbell affidavit on the number of employees from the old factory to use store that ended up working in that location once the transition occurred. And his affidavit sets out the names and the positions in great detail of those individuals, and there were five of them. And your client's affidavit says, generally, most of the same personnel continued to work, although it doesn't say where. It says, when Dollar Tree took factory to you over at my store. Now, you can infer that she means that they were there. But is that specific enough to counter an affidavit that has exact names and numbers? And if so, why? Two things in response to that, Your Honor. First, she additionally names a number of individuals that she could recall. She includes the such as reference. And also, those are all supervisory employees, assistant. I don't think either one of them named anything, any of the regular employees, the bank and file employees. And Mr. whatever it is, Galloway's, not Galloway, the store manager, supervisor's affidavit, only responds to the question of supervisory employees and doesn't. I don't read it that way, but you look at page 112 and look at paragraph 6, where it starts out that Ms. Sullivan filled out the application and was hired. And then it says, three other former employees were also hired. Now, they were going to be assistant managers. So you're saying there's an ambiguity in his affidavit as well? Is that your position? Yes, Your Honor. And again, on summary judgment, we should take the evidence and the inferences, all reasonable inferences, and the light most favorable to the non-moving party in this analysis, Ms. Sullivan. Do you want us to infer from this Sullivan, no, from the Campbell declaration that they may have hired more than just these supervisors? Is that what you're saying? I think that's a reasonable inference. When you take his declaration and consider Ms. Sullivan's declaration in addition to that. One of the problems with the court's disregarding of Ms. Sullivan's testimony is that in the FMLA analysis of successor and interest, the court is supposed to look at this at the viewpoint of the employee at or near the time of the change. The district court had concluded that Ms. Sullivan's testimony was conclusory allegations. Well, isn't it conclusory to say that many other employees were hired, and is that enough? I mean, I understand that maybe I'm not reading these two correctly either. I find them both lacking somewhat in specificity. But she names, as I understand, four employees for assistant managers or whatever they were. She also says that most of the same personnel, which is certainly more than the four she named, but none of those, that's the only statement she has other than supervisory personnel. So to say that that's vague or unspecific or conclusory or whatever, that's not a very clear, specific statement of facts, is it? In regard to whether or not it's conclusory, all of Ms. Sullivan's testimony was provided based on her personal knowledge. Well, that's all there is. There's no other affidavit by anybody that deals with the subject, is there? Not that I'm aware of, other than Mr. Campbell's. Well, let me go over some of the factors that are in her affidavit. She says that we're continuing to employ retail salespeople working during regular store hours. How is that even enough, in theory? I mean, a retail sales could mean anything. And if you have a small bakery and somebody who sells all kinds of food and happens to have some bread and takes over that space and operates during the day, like all retail businesses, I don't understand how these other facts are even enough to suggest successorship. I think you have to take that statement in connection with the other statements that she makes regarding the type of merchandise that was being sold, so that you can get the patience. Well, that was my point of the example that I gave. You have a bakery that operates in a storefront. They close down. Another operation comes in and opens a grocery store that carries all grocery products, including some bakery items. And like all grocery stores, they all operate approximately the same hours. Is that enough to make the second store a successor within the meaning of this statute under sort of normal labor law principles? When you're continuing the continuity of the same type of operations, I think that's the crux of it. What makes it the same type of operations? Isn't it too generic to say it's retail? And some of the things that the new people sell are similar to some of the things that the old people sold. Isn't that just too attenuated? Your Honor, for the purposes of this act, I don't believe it is. The whole concept of successor and interest is to determine whether or not it's equitable under the three factors, the employee's interest, the employer's interest, and the purpose of the act. These eight factors are here to help guide the analysis. They're not a test in and of themselves. And when you take a look at the three factors, the employee's interest, she had an interest in being able to continue to work in her job. She'd been there eight months and not have to choose between working in her job and responding to her mother, who was in intensive care and dying. Take a look. She was making $15 an hour. She had taken nine days off. She was asking for a 10th day. And then you take a look at Dollar Tree, the employer's interest. And the employer made over $3 billion in the company. See, if that's the test, then everybody's a successor. If they had opened a toy store instead of a clothing store, it would still be in her interest to receive this statutory benefit, of course. And if it's a great big toy chain, they have a lot of money, it's no skin off their back. But that isn't what the statute requires. It requires successorship. And my argument to this panel is that the court took too narrow of a definition of the continuity of business. That there is a difference, taking a look at the evidence that's been submitted, there certainly is a difference between the product lines that Factory to You sold and Dollar Tree sold. But that difference is negligible, considering they're both discount stores. They're both retail stores. They are getting the benefit of the workers that they've hired from the prior store. They get the benefit of the location. And being in the same location, it's the same demographic that's going to shop at these discount stores. Even though they've got a little bit of a difference in their product lines, I think focusing on their product line is too narrow of a view in determining successor liability. And I am 25 seconds left. I apologize. Well, I think you end with putting the issue for us for where it is. But how it comes out is another question. Certainly. Thank you very much. If it pleases the court, Leslie Weatherhead of Spokane for Dollar Tree Stores, it's not argued or arguable that the non-moving party is entitled to the benefit of all the facts that cut in. Is that what the judge did here, though? Yes. Yes, Your Honor. If you look at Ms. Sullivan's declaration, it's composed of some facts and some conclusions. The conclusions, if you read them carefully, are lifted almost wholesale from conclusions expressed in the Department of Labor report that later became available to the parties when this litigation got started. The facts that are set out in Ms. Sullivan's declaration, she worked for Factory 2U. Factory 2U is a clothing store. It closed. Its location was taken over by Dollar Tree. And many or most of the employees were hired. That is a conclusion. Close to the same person. Well, that's not a conclusion. If it's a fact, it's a fact. I mean, she didn't give the specifics. She didn't say we had 24. Right. But it's not a conclusion. It's a statement of fact, which may not be sufficiently specific. It is. But it is a statement of fact that most of the employees continued to work after the takeover. Your Honor, respectfully, Ms. Sullivan is entitled to the legitimate inferences from the facts that she identifies. But to say that most of the employees, in the face of specific testimony from Mr. Campbell, who says, we hired, the place was vacant. We hired 28 people to constitute the setup team. Among those 28 people, one, Irene Renteria, was a former Factory 2U employee. Later on, after being retrained, after being hired as new employees by Dollar Tree, and trained by Dollar Tree at the Kennewick and other stores, which is precisely in accord with Ms. Sullivan's declaration, then she and one other managerial employee were assigned to the Fasco store. Two other managerial employees. And does it say somewhere no other employees were hired? Your Honor, it's not that clear. What it says, what Mr. Campbell's declaration says is that the setup team consisted of 28 people, including this one employee, Ms. Renteria. And then after the setup team completed its work, the store was staffed with 15 to 25 clerks, most of whom had been on the setup team. And so none of that tells you whether those employees were former employees of U2, or whatever it was, F2, of the prior store. It tells you that most were not. But where does it say most were not, even? I mean, I don't see anything about, he talks about the ones that she had said were assistant supervisors, and says that they came along. And then she says most of the employees came along. And he answers the specific ones and explains what happened to those that she mentioned specifically. He says, Mr. Campbell says, you have two sets of staff. You have the setup team, which works while the store is closed after the renovation to stock the shelves. That's 28 people. Of those, one was a former. Let me ask you what, to me, is kind of the follow-on to this. Let's assume, for the sake of this question, that the affidavits are either ambiguous or sufficiently in conflict that we would take as true for the purpose of summary judgment that most of the former employees went to work for Dollar Tree. How does that change the analysis? Is that enough, in light of all the other undisputed facts, to create a genuine issue of material fact on successorship? Is that enough to tip the balance? I don't think so, Your Honor. And clearly, Judge Shea didn't think so. Judge Shea applied. We have to know her review. Don't worry about what he said. Just convince us. Very well, Your Honor. Excuse me. Judge Shea applied a test from a case called Vanderhoef. And I should note that there is not, from this court, controlling authority as to how you measure successor business. But he applied a case called Vanderhoef, which said you should look at this from the point of view of the employee. And it's not hard to imagine circumstances involving mergers and acquisitions, or nowadays, when a bank gets taken over. The FDIC comes in at 5 PM on a Friday and says this bank is closed. And it's open at 8 AM Monday. This would base him on labor law principles. Yes, Your Honor. And why don't you take the factors in the regulation? That might be a good way to get specific. Sure. Your Honor, I absolutely would address the factors. But it seems to me you need to understand the sort of overarching consideration. Was the employee functionally and effectively working in the same place? When the bank changes its logo from Friday afternoon to Monday morning, and your supervisor's the same, the customers are the same at the teller line, it's not fair to the employee to say you have to get a whole new deal. You lose all your seniority. Well, that's an easy one. We wouldn't be here for that. Now we're coming to a more difficult one. And so what makes this one, respectfully, Your Honor, easy from the perspective of what the trial court did is that setting aside the factor of continuity of workplace. OK, so then we'll go down factor two, use of the same plant. I assume that this is use of the same location. Well, Your Honor, in my mind, plant implies some kind of capital improvement to a location. Plant, in the industrial context, implies a factory, a production line. In this context, Your Honor, the evidence is undisputed that the shell of a building was taken. It was completely vacated. It was renovated. The shelving was taken out. All right, so you're saying that doesn't apply because they renovated it. Right, Your Honor. I mean, if you ask what is the plant for a retail operation, it's got to be shells and vacuums. Then we'll get to number three. Number three is continuity of the workforce. Ted Graves had assumed that for this purpose. Similarity of jobs and working conditions. Your Honor, there was no evidence either way on that. Ms. Sullivan provided none, and Dollar Tree attempted to make no showing of that. Isn't it true that there were salespeople selling products of whatever you call the discount retail stores? Isn't it evident what people do, what the job is in discount retail stores? Product line is addressed in a separate category. No, no, I just said what the people do. Right. People in discount retail stores sell the product, right? They do, Your Honor. And in this instance, the evidence was that Ms. Sullivan, in particular, applied for a new job with Dollar Tree and spent, according to her account, two weeks being trained at a Richland store. So clearly, in the mind of her employer, she had to be trained to do her job. That at least implies that her job was different from what it had been at factory to you. There was no contrary evidence suggesting a complete identity of working conditions. No, I'm sure there was not a complete identity. Similarity is the term. OK. Next is similarity of supervisory personnel. We don't know, how many supervisory personnel were there? The record shows that Ms. Sullivan had been the manager of the factory to you store in Pasco. And her own affidavit shows that Mike Campbell was the manager after Dollar Tree opened a new store in Pasco. Talking about supervisory personnel, not the managers. Well, the supervisory personnel would be, I would assume, the store manager, the assistant managers, and then whoever the regional managers are. And the evidence was undisputed on both sides, that Ms. Sullivan had been the manager of the factory to you store. She was not the manager of the Dollar Tree store. Mr. Campbell was. And Mr. Campbell reported to a Ms. Peters. And neither Ms. Campbell, or excuse me, Mr. Campbell nor Ms. Peters had ever worked for factory to you before. One of the problems I have with this understanding of facts, I mean, that's understandably a legal problem, is that the affidavit says that you started with 28, and then over some period of time, it turned out to be eight people working in the store. And it doesn't say when it went to eight, whether this was a normal transition to start with a bang, and then to get to your regular employees. It doesn't say how many of those eight employees came from the old group. The figures are very unhelpful. I apologize for that to the extent that it was our responsibility to develop this record for Dollar Tree, Your Honor. I would suggest that a fair reading, a reading in favor of Ms. Sullivan, giving all the inferences in favor of Ms. Sullivan, would be that of those eight people, one was a former factory to you employee. That would be Ms. Renteria. Why would that be? If you're going to give her all the inferences, and she says most of the employees went over, and then there were only eight at the end, how do we know how many of those eight were the old group if we're giving her all the inferences? Because Mr. Campbell, whose testimony is not rebutted, and is not inconsistent, well, it is inconsistent to the extent of the conclusion adverted, which is most. One is not most. But the specific furnish by Mr. Campbell is that one came over to be part of that 28. Well, what he did was respond to her affidavit, which he gave four supervisory employees who came over. And he explained what happened with each of those. I think two of them stayed. Two of them went to other stores. But those were only of the four that she mentioned from the supervisory group. So I mean, I think I must say I find both affidavits quite unsatisfactory if you're to try to figure out what the actual facts were. But OK, that gets you down to something that I don't know what the effect is. Well, similarity of products or services, I mean, it's clear what the difference is, the level of generality, whether it's a discount store that sells various things or whether it's a specific store that says one type of discount item, only clothing, as opposed to a general discount type of operation. And then you get to the ability of the predecessor to provide relief, which clearly is none. So those are the eight factors that are listed. And I guess, is it legal disagreement between the parties as to where they lead you? Yes, Your Honor. Your Honors, my time is up. Unless the court has further questions, I'll submit. We've taken all your time. Is there anything further you would like to say that we have not given you time to say? No, Your Honor. Would you do me a favor? The ultimate conclusion, is it equitable? Yes, Your Honor. Ultimate, and the factors help you get to that conclusion. So would you summarize for me why it would be inequitable? Here, I mean, why should the balance tip in favor of dollar? Your Honor, the statute limits the application of the Family Medical Leave Act to either employees who have 12 months continuous service, or employees who have 12 months continuous service, straddling two companies that are substantially the same business. And it is equitable. The equities in favor of the employee, whose role doesn't change. In the example I gave, whose logo on their name badge changes from Friday afternoon to Monday morning, but everything else stays substantially the same. The equities are clearly in favor of treating that employee as an existing and ongoing employee. But that's not the situation. Here, Dollar Tree opened into a Novo store. And the only real continuity is that it rented the same space and it hired a handful, at most five, of the former employees who had numbered apparently 12 retail clerks and four supervisory level people at factory to you. That is the only continuity. Did Ms. Sullivan have an expectation, have a reasonable basis upon which to assume that her job really hadn't changed when the clothing store that she managed closed? And when she applied for a new job as an assistant manager of a variety retail store? And respectfully, I'd say the equities are that she would not have reasonably expected that her job didn't change. It's not fair that factory to you closed, but it did. Thank you, Your Honor. Thank you very much. You have 13 seconds. By the time you get here, it'll be over. I've got 25. OK. Your Honor, just briefly, merger isn't required for successor liability. And in regard to the reasonable expectation of Ms. Sullivan, I respectfully direct the court to Dollar Tree's policies, which appear in court record 37. And they lay out that family medical leave is going to be provided to the employees. And this was provided to Ms. Sullivan. Thank you. Thank you, counsel. Case just argued will be submitted.
judges: Reinhardt, Graber, Paez